[Civ. No. 11698. Second Appellate District, Division Two.—March 1, 1938.]

SOUTHERN PACIFIC COMPANY (a Corporation), Appellant, v. LEWIS B. FELDMAN et al., Respondents.

W. I. Gilbert for Appellant.

George L. Greer for Respondents.

CRAIL, P. J.—Lewis B. Feldman was doing a shipping business under the name of Atlantic Fruit & Produce Com-

pany, and it became necessary in his business to furnish a bond to guarantee the payment of freight to several of the railroad companies. He obtained from the Commercial Standard Insurance Company a bond in favor of six railroad companies, including the plaintiff, "as their respective interests may appear, in the sum of Twenty-five Hundred and no/100 dollars ($2,500.00) the maximum liability hereunder, lawful money of the United States, for the payment of which the said Principal, and the said Surety, bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents. . . . Whereas, . . . it has been agreed that the said Railway Company, or Companies, will receive prepaid shipments from the Principal, and will deliver collect shipments to the Principal without first exacting payment of the charges thereon. Now, Therefore, the Condition of This Obligation is such that if the Principal shall . . . pay, or cause to be paid, to said Railway Company, or Companies, all of such charges then this obligation shall be void, otherwise it shall be and remain in full force and effect; . . . "

The bond was delivered to a joint custodian for the railroads with a letter from Levitt Maywood Company, insurance brokers, which read as follows: "We are inclosing herewith joint bond in amount of $2500.00 issued March 30th for Lewis B. Feldman, dba Atlantic Fruit & Produce Co., by the Commercial Standard Insurance Co. Please allocate this bond $1500.00 to the Southern Pacific $500.00 to the Santa Fe, and $500.00 to the Union Pacific." Thereafter Feldman failed to make payments to plaintiff on eighteen shipments of perishable produce in the total sum of $2,176.55.

The first cause of action is against Feldman alone. It is alleged that Feldman delivered a carload of perishable produce to the plaintiff for transportation to Salt Lake City consigned to the said defendant; that the shipment was made and accepted there by the consignee; that through inadvertence and mistake plaintiff collected $10.38 less on the shipment than the interstate commerce commission required it to collect. It therefore seeks judgment for the outstanding undercharge against Feldman.

The second cause of action alleges the same matters, declaring upon the same shipment, and in addition sets out that Feldman and the Commercial Standard Insurance Com-

pany gave the plaintiff the bond above referred to, guaranteeing the payment of said freight charges. Appropriate allegations set forth the fact that the bond was in force and effect at the time the charges sued for accrued; that demand was made on defendant for payment under the bond, but that payment had been refused. Recovery on the bond was sought against the insurance company as surety.

The other causes of action set forth in the complaint are similar. The first six shipments (causes of action 1 to 12) originated in Los Angeles. The remaining twelve shipments (causes of action 13 to 36) originated at various points in Imperial Valley. All shipments were consigned to Feldman at Salt Lake City, to which point they were transported, and where they were received by Feldman in due course. The last two causes of action are for demurrage charges amounting to $28, for which the parties agree on appeal judgment should have been rendered.

The answer of the insurance company sets up by way of affirmative defense (1) that the bond as written guarantees and was intended to guarantee only incoming freight received at Los Angeles, and that none of said shipments were received at Los Angeles, and (2) that at the time the bond was written its face amount was allocated as follows: $1500 to the Southern Pacific Company, $500 to the Atchison, Topeka & Santa Fe Railway, and $500 to the Salt Lake Railway Company, and that in no event should the plaintiff be entitled to recover in excess of $1500 under this allocation. At the trial the facts were agreed upon as above stated, except as to the affirmative defenses. As to them the bonding company offered in evidence two additional letters.

One of these letters was from the custodian of the bond and read as follows: "Commercial Standard Insurance Co., 1031 South Broadway, Los Angeles, Calif. Gentlemen: Your letter of Sept. 1st in re cancellation of Freight Bond your No. 25, filed by Leon Mayer, dated March 30, 1933: Your letter refers to the bond as being a guarantee bond covering perishable shipments. The only bond of which we have record is a joint freight bond executed by you on March 30, 1933, covering the 96-Hr period of credit on incoming shipments. Please advise if this is the bond you wish cancelled."

The second letter was from the general freight agent of the plaintiff at Los Angeles and said, "Regarding your letters of August 11th, in connection with cancellation of bond executed in favor of Atlantic Fruit & Produce Co. . . . 'While your letter states you wish to retire as surety under a bond guaranteeing payment of freight charges on shipments of perishable and damage account diversions, which would indicate the bond involved is one running to our line exclusively, nevertheless we are assuming that what you have reference to is a joint credit bond covering inbound shipments, as we do not locate a perishable bond involving your company in our files.' " There was no further evidence with regard to any one of the letters.

Under this state of the pleadings and the evidence the trial court held against Feldman for the full amount of $2,176.55. It found in effect that the six shipments which originated in Los Angeles and which were accepted by the defendant Feldman in Salt Lake City were outgoing shipments. It further found that the twelve shipments originating at various points in Imperial Valley and also consigned to Feldman at Salt Lake City were incoming shipments. It found in effect that the bond did not cover outgoing shipments, but did cover incoming shipments, and entered judgment for the undercharges on the twelve shipments originating in Imperial Valley for a total of $650.48. The judgment was for said sum against Feldman also, although it is obvious, and all parties concede, that judgment should have been for $2,176.55 against Feldman. No appearance was made by Feldman in the action.

The trial court held in effect that the three letters above referred to became a part of the bond and varied its plain written terms. We are of the view that the evidence to sustain this finding is unsubstantial. As to the first letter which attempted to allocate the insurance, it attempted to allocate it to only three of the six railway companies. There is no evidence that the insurance brokers were authorized to vary the terms of the bond on behalf of the bond company, and there is no evidence that the custodian of the bond was authorized to vary the terms of the contract for the railroad companies or that he had any authority other than to be the custodian. There is no evidence that the plaintiff knew of the letter until after suit was brought.

As to the two other letters, the evidence is also unsubstantial. On their faces they were written, not for the purpose of modifying the contract, but in answer to letters from the surety cancelling the bond, and they only ask to identify the bond which is to be cancelled. These letters do speak of a ''joint freight bond on incoming shipments'', but these letters were written after the liability on the bond had accrued. In any event these letters do not refer to bonds on incoming shipments *to Los Angeles*, and might as well cover incoming shipments at Salt Lake City, and there is nothing in the bond or letters to limit it to incoming shipments at Los Angeles.

It is clear from what we have said above that the judgment should be rendered against both Feldman and the bond company for the full amount of $2,176.55 with interest. The trial court is directed to so render judgment.

Wood, J., and McComb, J., concurred.